UNITED STATES FIDELITY & GUARANTY CO. *v.* YOST.

(Division A. Sept. 12, 1938. Suggestion of Error Overruled, October 31, 1938.)

[183 So. 260. No. 32903.]

(Division A.  Jan. 9, 1939.)

[185 So. 564.  No. 32903.]

J. T. Lowrey, of Gloster, and **Wm. G. Hall** and **Wm. M. Hall**, both of Memphis, Tenn., for appellant.

Price & McLain, of McComb, and **Green, Green & Jack-**
son, of Jackson, for appellee.

72

74

Argued orally by **Wm. G. Hall**, for appellant, and by **Forrest B. Jackson** and **W. G. McLain**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

John N. Yost, administrator of the estate of Robert L. Payne, deceased, filed a bill for discovery and attachment, as against a non-resident corporation, seeking to recover from the appellant, hereinafter called the "insurer," $25,000, the amount of a judgment the prede-

cessor administrator had recovered from the Noel Hotel Operating Company, hereinafter called the "insured." This judgment had been recovered in a court of competent jurisdiction in Nashville, Tennessee, the basis of the suit being a contract of indemnity insurance issued by the insurer to the insured, covering accidents occasioned by the operation of its electric elevators. Attachment was levied on lands of the insurer, and it appeared and answered, setting up, as a defense, a clause of the policy as releasing it from liability. After hearing the evidence, the court found the issues in favor of the administrator, and the insurer appeals to this court.

On May 14, 1931, Robert L. Payne was a member of a flying squadron in the service of the United States Government, and his squadron was spending the night at Nashville. While being transported upward from one floor to another of the Noel Hotel in an elevator operated by Gaines Ensley, Payne was thrown or fell to the floor due to a sudden jerk of the elevator, and its inner door being open, his head was caught between the floor of the elevator and the beam at the rise of the next floor, resulting in the instant death of Sergeant Payne.

Prior to that time the insurer had issued its policy of indemnity to the insured providing for a coverage of a minimum of $50,000 and a maximum of $200,000. The provision on which the defense of this action is based is Condition "A" thereof, which is in these words: "This policy does not cover loss from liability for, or any suit based on, injury and/or death (1) Caused by any elevator while in charge of any person under the age fixed by law for elevator attendants, or if there is no legal age limit, under the age of Sixteen (16) years . . ."

Condition "H" of the policy provides that the insolvency or bankruptcy of the insured does not release the insurer from the payment of damages for injuries sustained, or loss suffered by any person or persons as the result of an accident while the policy is in force, and in case execution against the insured is returned unsatis-

fied in an action brought by the injured, or his personal representative in case of death resulting from the accident, then an action may be maintained against the insurer under the terms of this policy.

Immediately after the death of Payne, on the same night, the insured notified the general agents of the insurer, and they, in turn, notified its agent and the adjuster, who began an investigation thereof, and, among other things, took a written statement from Gaines Ensley, showing that, at the time of the accident, he was 19 years old, and born on April 10, 1912. The insurer's adjuster relied upon his own investigation; made a report promptly to the insurer, and the management of the suit was immediately turned over to the attorneys who represented the insurer in that vicinity. These attorneys likewise made an independent investigation, but made no further effort to ascertain the age of Ensley, relying solely on his own statement made to the adjuster as to his age. The insured made no representations whatever as to the age of Ensley, but the adjuster saw his application to the hotel for employment, showing his age to be as stated to the adjuster.

The administrator of the estate of Robert L. Payne caused summons to be served on the insured on November 25, 1931, and filed his declaration seeking damages for Payne's death against the insured on January 5, 1932. The attorneys for the insurer took control of the litigation, and retained it until the termination of the trial in September, 1932, when the attorneys representing the insurer, having charge for the insured, placed Gaines Ensley on the witness stand, and, for the first time, it was ascertained that he was born on April 10, 1914, and, at the time of the accident, was a little over the age of 17 and under 18. Ensley was well developed and no one suspected, from a physical view of him, that he was under 18 years of age when the tragedy occurred. Thereupon, the attorneys for the insurer sent the adjuster to the Vital Statistics Bureau, a few blocks from

the courthouse, to ascertain from the records that Ensley was not 18 years of age on May 14, 1931. His mother also testified that he was born April 10, 1914. This public record was easily available, and Ensley's father and mother, and the attending physician at his birth, were at Waverly, Tennessee, within a few hours drive from Nashville.

After the attorneys for the insurer ascertained the truth, they notified the insured that they would no longer conduct the defense and would withdraw from the case, but it was agreed that they would make a motion for a new trial, a verdict having been rendered for $17,000. They were successful in having the court set aside the judgment and order a new trial of the case. The attorneys for the insurer had no further connection with the case, and in 1934, the insured having in the meantime gone into bankruptcy, and no one appearing in defense, the case was again submitted to a jury which rendered a verdict for $25,000 on all issues, and judgment was entered accordingly.

On the trial of the case at bar, one of the attorneys for the insurer, who conducted the case on the first trial, testified that, from talks with Gaines Ensley, they found they could not rely upon his statements. The attorney made this statement in giving his explanation as to why he had the record in the Bureau of Vital Statistics examined before the attorneys withdrew from the case. This record discloses that neither the insured, nor the insurer, actually knew anything about Ensley's age except his statement before the trial. In this case there was introduced the public record of the Vital Statistics Bureau showing his age. The record of the first trial was also introduced in evidence in this case, as well as the ordinances of the City of Nashville, which made it unlawful for a person under 18 years of age to be employed in the operation of elevators, or to operate them.

No question was ever raised between the insurer and the insured as to the nonage of Ensley until September

26th, 1932. No investigation whatever was conducted by the insurer relative to the age of Ensley until after he delivered his testimony in court. An hour's investigation before the insurer took charge of the case would have revealed the nonage of Ensley. In other words, the insurer rested content upon Ensley's bare statement as to his age.

We will not go into details as to the liability of the hotel company to the administrator, save to state that the declaration charged negligence in two general particulars only, the defective construction of the elevator so that the gate or inner door would not close when it was put in motion, and the negligence of the operator in giving it a sudden jerk causing decedent to fall to the floor, and putting the elevator in motion without closing the inner door.

We shall assume in this case, without deciding the very interesting question as to whether or not the judgment in the Tennessee court is res adjudicata as to the liability of the insurer for the accident, independent of the nonage of the operator of the elevator. In the first trial, the court gave a peremptory instruction that the hotel company was not liable on the evidence as to a defective elevator and so entered its judgment. A new trial was then granted at the instance of the insurer, and the court set aside the verdict and the judgment thereon.

Another very grave question is presented by the appellee in his contention that there was no valid ordinance of the City of Nashville in reference to the age of persons operating elevators, the main objection being that the Legislature had not granted that municipality authority to enact such an ordinance. Another serious question presented by appellee is that the nonage of Ensley was not a proximate cause of the death of Payne.

We think the court below held correctly, under the facts of this case, that the insurer waived its right to claim exemption because of anything in Condition "A"

of the policy hereinabove set forth. Tersely stated, the insurance company conducted the litigation, having taken charge immediately after the injury, and retained exclusive control thereof, without reservation, from about May 14th, 1931 to September 26, 1932; made its own investigation; was not induced by the insured, by word or deed, not to prosecute the investigation to a final conclusion, if it desired to plead exemption on account of the nonage of Ensley.

It must be remembered that under the contract of insurance, during these many months in which the insurer had exclusive control of the litigation, it rested content upon its own investigation, and exercised its own prerogative, as shown by the activities of its attorneys. In such case, under such circumstances, when the insurer took charge of the litigation, conducting it in court which revealed the horror of the accident—the decapitation of a young aviator in the service of his country—thus taking from the insured the right to compromise or control its law-suit, the advertising by public litigation of such a tragedy was injurious to a hotel, and the insured was forced, by its contract, to permit the insurer to remain in exclusive control of the litigation. The loss of the power to manage and control his own case as he wills, as he chooses, is, in all cases, harmful to an insured, and in this case was even more prejudicial.

We are of the opinion that the conduct of the insurer in this case waived Condition "A" of the contract. If the insurer desired to avail itself of Condition "A" the facts were easily obtainable by the exercise of due investigation; and we want to stress the fact that the insured made no representation to the insurer which caused it to take exclusive charge of the litigation and retain it for fifteen months.

This cause of action arose in the State of Tennessee, and it is necessary for us to ascertain whether or not the Supreme Court of that State recognizes the doctrine of waiver or estoppel as to forfeiture, such as is here

invoked, on the part of an insurer. That court has answered this question in the affirmative. It was so held in the case of Fulton Co. v. Massachusetts Bonding & Insurance Company, 138 Tenn. 278, 197 S. W. 866, approving Tozer v. Ocean, etc., Co., 94 Minn. 478, 103 N. W. 509, which case is often cited by courts and text books as authority for this doctrine of waiver of forfeiture. However, in the Tennessee case it was shown that the insured had represented to the insurer that the employee therein was over 16 years of age, and that fact could be proven, and thereby induced the insurer to take charge of the litigation.

Our own court has recently recognized the doctrine of waiver of forfeiture in the case of Stonewall Life Ins. Co. v. Cooke, 165 Miss. 619, 144 So. 217.

It cannot be disputed that the rules of substantive law of a state where a cause of action arises to be applied by the court of the forum, but the quantum of proof required is governed by the law of the forum. See Restatement of the Law, Conflict of Laws, Section 595 and comments; Boothe v. Teche Lines, Inc., 165 Miss. 343, 143 So. 418; Interstate Life & Accident Co. v. Pannell, 169 Miss. 50, 152 So. 635. Our court holds that it is not necessary for an insured to have been misled for a waiver of forfeiture to be applied, and that the facts need not constitute an estoppel. Stonewall Life Ins. Co. v. Cooke, supra. Slight circumstances of intention to waive a forfeiture will be sufficient; the law will seize upon them as evidence of intention. Stonewall Life Ins. Co. v. Cooke, supra.

But the insurer says we did not know of the operator's nonage until we were in the midst of the trial, therefore, we had a right to change our position. We think this has been generally and correctly determined to mean that *even if an insurer ought to have known the facts*, or with proper attention to its own business it would have been apprised of them, and cannot set up ignorance as an excuse. General Tire Co., etc. v. Stand-

ard Accident Ins. Company, 8 Cir., 65 F. (2d) 237; Knights of Pythias v. Kalinski, 163 U. S. 289, 16 S. Ct. 1047, 41 L. Ed. 163; Brooks Transportation Co. v. Merchants' Mutual Casualty Co., 6 W. W. Harr. 40, 36 Del. 40, 171 A. 207, 211; Western Casualty & Surety Co. v. Independent Ice Co., 190 Ark. 684, 80 S. W. (2d) 826; Malley v. American Indemnity Corp., 297 Pa. 216, 146 A. 571, 81 A. L. R. 1322; Suydam v. Public Indemnity Co., 161 A. 499, 10 N. J. Misc. 868; Jusiak v. Commercial Casualty Ins. Co., 169 A. 551, 11 N. J. Misc. 869; Empire State Surety Co. v. Pacific National Lumber Co., 9 Cir., 200 F. 224; 36 C. J. 1127; Cooley's Briefs On Insurance, (2d) Vol. 5, page 3959.

The case of S. & E. Motor Hire Corp. v. New York Indemnity Co., 255 N. Y. 69, 174 N. E. 65, 81 A. L. R. 1318, is strongly relied upon by the insured for its position that it did not waive the right to avail itself of Condition "A" of the policy. Under the circumstances of that case, the court therein laid stress upon the fact that the insured furnished the insurer with an affidavit of the operator that he was 18 years old, and that the insurer had a right to rely upon the information furnished by the insured that the insured had employed a chauffeur of lawful age.

In the case at bar it is not contended that the insured, by word or deed, induced the insurer to take its position as to its liability for the death of Payne. It took its position from its own investigation, from which it learned that Ensley's statements could not be relied on, and the evidence of his true age was easily accessible, and, really, the insurer made no investigation on that point until Ensley testified on the trial. With a little diligence, and within an hour's time, the insurer could have obtained the facts from a public record. They knew, or should have known, that Ensley had his employment at stake.

Applying our own rules as to the quantum of proof requisite to establish a waiver, we could not be con-

trolled by the opinion of another court which applies a different rule of evidence thereasto.

We think most of the cases cited by counsel for appellant upon this point show affirmatively that the insured induced the insurer to take control of the litigation and recognize its liability. In none of the cases which we have examined, and which have been cited by industrious counsel, have we found one on all fours with the case at bar.

Applying the controlling legal principles to the evidence, we are of the opinion that the Chancellor did not err in holding that the insurer herein had waived its right to plead Condition "A" of the policy.

Affirmed.

**Smith, C. J.**, delivered the opinion of the court on motion.

The appellants suggest that our judgment affirming the judgment of the court below is erroneous as to the damages allowed the appellee under Section. 3387, Code of 1930, which provides: "In case the judgment or decree of the court below be affirmed, or the appellant fail to prosecute his appeal to effect the Supreme Court shall render judgment against the appellant for damages, at the rate of five per centum and costs, as follows: If the judgment or decree affirmed be for a sum of money, the damages shall be upon such sum." The judgment of the court below was rendered on January 11, 1937, and was for $25,000 "with six per cent (6%) interest per annum from April 14, 1934, until said sum is paid, together with all costs accrued or to accrue herein." This judgment was affirmed by us on September 12, 1938. The damages allowed were $1,455.63, being 5% on the aggregate of $25,000 plus 6% per annum interest thereon from April 14, 1934, to January 11, 1937, the date of the rendition of the judgment in the court below. The appellant says

the damages should have been allowed only on the $25,-000.

The sum of money on which the statute contemplates damages to be rendered is that which appears from the judgment to be due when the judgment was rendered, and for which a recovery was awarded. It does not contemplate damages on interest which thereafter accrues. If the court below, instead of rendering its judgment in the present form, had added the interest then due on the $25,000 thereto, and rendered a judgment for the aggregate amount, the damages thereon would of course be 5% on this aggregate amount. This difference in the form of the judgment does not change its substance. The request to correct the judgment will be overruled.