**STRATFORD INSURANCE COMPANY, Plaintiff,**

v.

**Murray COOLEY, Stone Timber Corporation and Bituminous Casualty Corporation, Defendants,**

**Murray COOLEY, Third–Party Plaintiff,**

v.

**Robert LEE, Jr. and Transport Systems Insurance Agency, Third–Party Defendant.**

**No. CIV. A. 3:95CV750LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 4, 1996.

---

**40.** Harris Affidavit.

**41.** Harris Affidavit, Exhibit B.

**42.** Forbes Affidavit, Exhibit I.

S. Robert Hammond, Jr., Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Hattiesburg, MS, Robert P. Thompson, Copeland, Cook, Taylor & Bush, Jackson, MS, for Robert Lee, Jr. & Transport Systems Ins. Agency.

A. Malcolm N. Murphy, Lucedale, MS, William C. Walker, Jr., Biloxi, MS, for Murray Cooley.

Nancy M. Maddox, Edward A. Moss, Holcomb Dunbar, Oxford, MS, for Stone Timber Corp.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, Chief Judge.

This cause is before the court on motions for summary judgment filed by various par-

ties. Defendants Stone Timber Corporation and Bituminous Casualty Corporation have jointly moved for summary judgment, as have defendants Robert Lee, Jr. and Transport Systems Insurance Agency, and plaintiff Stratford Insurance Company has filed a cross-motion for summary judgment. These motions have been fully briefed by the parties and the court, having considered the parties' submissions, finds and concludes as follows.

On August 14, 1994, Murray Cooley, while hauling logs for Stone Timber, was involved in a multi-vehicle accident a few miles south of Seminary, Mississippi, in which one person was killed and others were injured, and significant property damage was sustained. The tractor/trailer owned and operated by Cooley at the time of the accident was insured under a commercial truckers liability policy issued by Stratford. Stone Timber had liability coverage under a policy issued by Bituminous. Cooley immediately reported the accident to Transport Systems, the agent through which Cooley had procured the policy. Transport Systems in turn notified Stratford of the accident, but on the form transmitted to Stratford, erroneously identified the location of the accident as New Augusta, Mississippi. Ultimately, in September 1995, Stratford denied coverage to Cooley for the accident based on a "radius limitation" endorsement in its policy which excluded coverage for accidents occurring more than fifty miles from the place where the insured automobile was "principally garaged." Stratford advised Cooley that its policy did not extend coverage for claims arising from the accident since the location of the accident, 3.75 miles south of Seminary, was more than fifty miles from Lucedale, Mississippi, where Cooley's truck was principally garaged according to the policy. At that time, Stratford informed Cooley that while no lawsuits had then been filed against him, a demand for payment under the policy had been made by the estate of Jay Washam, the main accident claimant, and it was anticipated that litigation would be forthcoming for which Stratford would provide a defense, until such time as it received a judicial determination of the coverage issue.

The focus of this litigation is on Stratford's September 1995 determination of noncoverage of its policy, and the events leading to that decision. Stratford filed the present action against Cooley, Stone Timber and Bituminous in October 1995, seeking a declaratory judgment that there is no coverage under its policy for the subject accident and that it therefore has no duty to defend or indemnify Cooley for claims asserted against him arising from the accident. Cooley filed a third-party complaint against Transport Systems and its employee, Robert Lee, Jr., asserting that these defendants failed in their duties to apprise him of and explain to him the fifty-mile radius limitation in Stratford's policy. Cooley further asserted a counterclaim against Stratford for bad faith.

The Stratford policy provision at the center of this litigation states:

### 50 MILE RADIUS LIMITATION ENDORSEMENT

.        .        .        .        .

"We" will not be liable for any "accidents" or "losses" while a covered "auto" is operated more than 50 miles from the town where the covered "auto" is principally garaged. The town where the covered "auto" is principally garaged is stated in the Declarations under Item Three—Schedule of Covered Autos You Own.

On the declarations page, under the column headed "Territory: town and state where the covered auto will be principally garaged," appears "T015, Lucedale, Mississippi."

It is undisputed that Cooley's accident occurred more than fifty miles from Lucedale. However, Cooley, Stone Timber and Bituminous all submit that Stratford is obligated to defend and indemnify Cooley and Stone Timber, in the event it is determined that Cooley was its employee, for claims resulting from the accident. Stratford, on the other hand, maintains that the accident and consequent losses are excluded by the clear language of the radius limitation endorsement.

■ Initially, Cooley, Stone Timber and Bituminous argue that the radius exclusion in Stratford's policy is contrary to the public policy of Mississippi and is thus void and

unenforceable. They further assert, though, that even if the exclusion is otherwise enforceable, it still does not apply to the accident at issue because Cooley, at the time of the accident, was garaging his vehicle in Beaumont, Mississippi, less than fifty miles from the accident site. Finally, they assert that Stratford has in any event either waived the radius exclusion or is estopped from applying the exclusion by its failure to timely apprise Cooley of its denial of coverage.

Citing Mississippi's compulsory insurance laws (particularly Miss.Code Ann. § 63–15–1, et seq., and § 77–7–83), and *Nichols v. Anderson*, 788 F.2d 1140 (5th Cir.1986), defendants argue that Stratford's radius exclusion violates Mississippi's public policy and must therefore be declared void. *See Lowery v. State Farm Mutual Auto Ins. Co.*, 285 So.2d 767 (Miss.1974) (policy provisions contrary to state's public policy are void). In *Nichols*, the Fifth Circuit, applying Arkansas law, invalidated a radius exclusion clause in an Arkansas insurer's truckers liability policy because it violated an Arkansas Insurance Commission rule which proscribed application of any policy provision that would relieve the insurer from liability or from paying any final judgment, and because it violated Arkansas public policy, as gleaned from an Arkansas statute requiring that common carriers in that state, such as the insured there involved, carry minimum liability insurance. *Id.* at 1143. Since the exclusion was invalid under Arkansas law, it could not be given effect by a Mississippi court *unless* "the applicable Arkansas law voiding the clause is contrary to the settled public policy of Mississippi." *Id.* In considering that question, the court observed that "Mississippi's public

policy in maintaining safe highways is furthered by a finding that the exclusion clause is void." *Id.*

Defendants reason that Stratford's radius limitation endorsement must be declared void because the Fifth Circuit in *Nichols* implicitly found such clauses inimical to Mississippi's public policy. In the court's view, however, it is too much to say that *Nichols'* observation that the invalidation of a radius exclusion would comport with a general policy of maintaining safe roadways should be read as requiring invalidation of such clauses as *contrary* to Mississippi's public policy. Nor does it follow from the *Nichols* court's conclusion that Arkansas's public policy prevented enforcement of the radius exclusion that Mississippi law would similarly invalidate such clauses.[1] In contrast to the situation presented in *Nichols*, Cooley was not expressly subject to any of Mississippi's mandatory insurance statutes at the time of his accident, nor was there any Insurance Commission rule or regulation that would have mandated coverage or invalidated Stratford's exclusion. Defendants do not contend otherwise. Nevertheless, they cite Mississippi's mandatory insurance statutes as reflective of Mississippi's general public policies of "maintaining safe highways," *Nichols*, and "protect[ing] those injured by careless drivers," *Travelers Indemnity Co. v. Watkins*, 209 So.2d 630, 632 (Miss.1968). This court, however, is not persuaded that Stratford, in the absence of some more definitive articulation of public policy on this subject, ought to be precluded from enforcing its policy provisions.[2] *Cf. Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc.*, 747 P.2d

---

1. In the brief in support of their summary judgment motion, Stone Timber and Bituminous describe *Nichols* as "the only case applying Mississippi law to this issue." In their later-filed memorandum in response to the other parties' motions, they describe the case as "examining Mississippi's public policy on this issue." The basis for the Fifth Circuit's reversal of the district court in *Nichols* was its conclusion that Arkansas, rather than Mississippi, law applied to the issue. *Nichols*, 788 F.2d at 1142 ("essential inquiry" is whether the law of Mississippi or Arkansas applies to determine validity of radius exclusion clause). The Fifth Circuit concluded that Arkansas law applied and thus had no occasion to consider the correctness of the district

court's conclusion that the exclusion clause was valid under Mississippi law. *Id.*

2. The court would note that while no public policy argument was presented in *Calvert Fire Insurance Co. v. Swain*, 224 Miss. 85, 79 So.2d 537 (1955), it appears from the court's opinion in that case that but for the insurer's actions which were held to constitute estoppel, the Mississippi Supreme Court would have enforced an endorsement like that in the present case which limited coverage to an area within the fifty-mile radius of the place where the insured vehicle was principally garaged.

947, 951 (Okla.1987) (exclusion which confined liability coverage to 200-mile radius held invalid to extent of minimum statutorily-required liability insurance); *Trahan v. Bailey's Equip. Rentals, Inc.*, 383 So.2d 1072 (La.Ct.App.1980) (endorsement limiting coverage to trips by insured vehicle within fifty-mile radius of insured's address not contrary to any Louisiana public policy).[3]

■ Defendants next argue that the radius exclusion appearing in Stratford's policy, even if not void, does not apply to the accident in which Cooley was involved. They submit that the endorsement, when read in conjunction with the policy's declaration page, is ambiguous and must be construed against Stratford. To reiterate, Stratford's radius limitation endorsement by its terms excludes coverage for accidents occurring "more than 50 miles from the town where the covered 'auto' is principally garaged." It provides further that "[t]he town where the covered 'auto' is principally garaged is stated in the Declarations under Item Three–Schedule of Covered Autos You Own." A review of the policy's declarations page reveals that under the column headed "Territory: town and state where the covered auto will be principally garaged," is stated "T015, Lucedale, Mississippi." Defendants argue that since the declarations page does not identify simply a "town" of principal garaging (as one would expect from reading the language of the endorsement itself), but instead identifies both a territory (T015) *and* a town (Lucedale), the policy is ambiguous. They submit, then, that because Beaumont, the town where Cooley was actually garaging his truck at the time of the accident, is located within the territory T015 designated by the policy, then the truck was principally garaged at a permissible place under the policy according to the declarations page; and, since Beaumont (again, a permissible place for garaging) is within fifty miles of the accident site, then the policy could reasonably be interpreted as providing coverage for the accident.[4] Defendants' position is without merit. The radius exclusion endorsement, considered in conjunction with the declarations page, as it must be, cannot reasonably be interpreted in the manner urged by defendants. The radius exclusion endorsement does not state or intimate that coverage is provided up to fifty miles from the "town and/or territory" where the insured auto is principally garaged. Rather, it plainly says that coverage is excluded for accidents occurring "more than 50 miles from the *town* of principal garaging;" that "town" is clearly identified in the declarations as Lucedale.[5] Stratford's inclusion of

**3.** Most of the cases cited by Stratford for the proposition that Mississippi recognizes the validity of radius exclusion clauses provide little or no support for Stratford's position since they did not involve automobile insurance with its attendant public policy concerns. See *Richard v. Hartford Fire Ins. Co.*, 256 So.2d 502 (Miss.1972) (excluding coverage for property loss more than fifty miles from premises described in policy); *Home Ins. Co. v. Thunderbird, Inc.*, 338 So.2d 391 (Miss.1976) (policy providing coverage of up to 100 miles offshore but which did not limit coverage to 100 miles offshore from the United States did not operate to exclude coverage for accident occurring within 100 miles of Bahamian island); *Employers Ins. of Wausau v. Trotter Towing Corp.*, 834 F.2d 1206, 1212(5th Cir.1988) (navigational limits enforced in marine hull policy to exclude coverage for loss since insured's breach of express warranty regarding location of vessel, i.e., "within 100 miles of Greenville, MS," suspended coverage under federal law and Mississippi law).

**4.** Defendants also argue that the term "principally garaged" is ambiguous. They submit that because the word, "principal," means "chief; leading; most important or considerable; primary; original," *Black's Law Dictionary* 1073

(5th ed.1979), then "if Lucedale was to be the 'principal' place of garage," then it follows that "there could also be others." This argument is frivolous. The endorsement does not purport to exclude coverage beyond a 50-mile radius from wherever an insured might happen to have his truck garaged, but rather specifies coverage by reference to a particular place of garaging, namely, the "principal," or chief, leading, most important or primary place of garaging, which place the policy explicitly identifies as Lucedale.

**5.** Defendants argue that there was nothing in the policy that would have required Cooley to notify Stratford of any change in the principal garage place within the territory listed on the declarations page and that there was thus "nothing to suggest to Cooley that he would lose his coverage by garaging his vehicle in Beaumont and operating within 50 miles of Beaumont, as opposed to leaving it garaged in Lucedale and operating within 50 miles of Lucedale." However, inasmuch as the policy clearly and unambiguously provided only for coverage within 50 miles of the "town" of "Lucedale," where the truck was identified as being "principally garaged," Cooley could not reasonably have expected to have cov-

a territory designation on the declarations page along with its identification of the town does nothing to alter the plain meaning of the exclusion.

With all that having been said, however, the court nevertheless concludes as a matter of law that Stratford has waived its right to rely upon its radius limitation endorsement to deny coverage for the accident. The record in this cause establishes that Stratford was immediately notified of Cooley's accident by its agent, Transport Systems, which erroneously advised that the accident had occurred near New Augusta, Mississippi. Stratford's adjuster, aware of the fifty-mile radius limitation, specifically calculated a distance of 33.1 miles between New Augusta and Lucedale. In the meantime, Stratford retained an attorney to assist it with coverage questions and to investigate claims against Cooley, and employed Kavanay's Claims Service to investigate the accident. Significantly, though, Stratford did not send to Cooley a reservation of rights letter or obtain a nonwaiver agreement. Within two weeks of the accident, Kavanay's sent a report to Stratford which identified the accident site as Seminary; to the report was appended a newspaper article and an accident report, both of which also reflected the correct accident site. Yet Stratford did not recalculate the mileage between Lucedale and the correct accident site, either because it did not realize that there was a difference between the original report and the later-obtained information or because it did not occur to anyone at Stratford to do so. And therefore, Stratford proceeded under the apparent impression that its policy covered the accident. In January 1995, five months after the accident, it sent Cooley an "excess letter," informing him of the potential for exposure in excess of Stratford's $500,000 policy limits from claims arising from the accident. Then in June 1995, five months later, Stratford again wrote to Cooley, this time advising that it had completed its investigation and contacted the various claimants' representatives and that it had received a settlement demand from the estate of the individual

killed in the accident which it had asked its attorney to review. Stratford took that opportunity to again advise Cooley of his option to retain personal counsel to represent him for monetary exposure that might exceed the policy limits. Not until September 1995, over a year after the accident and likewise more than a year after the date when Stratford first was apprised of the true location of the accident, did Stratford advise Cooley of its position that the accident was not covered by the policy.

Defendants submit that based on these undisputed facts, Stratford has waived its rights to all policy defenses or, alternatively is estopped to rely on the radius exclusion by virtue of its having assumed Cooley's defense without first obtaining a nonwaiver agreement or advising him of its reservation of rights. The Fifth Circuit has defined the principles of waiver and estoppel, and the differences between the two, as follows:

> Although *waiver* and *estoppel* are sometimes used interchangeably, especially in the law of insurance, there is a subtle but significant distinction between the two. *See Intel Corp. v. Hartford Accident & Indem. Co.,* 692 F.Supp. 1171, 1179 (N.D.Cal.1988). Strictly defined, *waiver* describes the act, or the consequences of the act, of one party only, while *estoppel* exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. Id. at 1179 n. 8. In contrast to waiver, then, estoppel involves some element of reliance or prejudice on the part of the insured before an insurer is foreclosed from raising a ground for denial of liability that was known at an earlier date. *See* Restatement (Second) of Torts § 894(1) (1977).

*Pitts v. American Sec. Life Ins. Co.,* 931 F.2d 351, 357 (5th Cir.1991); see also 16B J. Appleman, *Insurance Law and Practice* § 9081, at 489–92 (1981) ("waiver" is voluntary, intentional relinquishment of known right, resulting from affirmative acts of in-

---

erage within 50 miles of wherever he decided to garage the vehicle, at least not without notice to

and approval by Stratford.

surer or nonaction with knowledge of the facts, while "estoppel" refers to abatement of insurer's rights where it would be inequitable to permit their assertion).

In the court's opinion, while it is apparent that Cooley was led by Stratford's actions to believe that the Stratford policy provided coverage for the action, defendants' lack of proof that Cooley was misled *to his injury or prejudice* by any conduct or representation of Stratford dooms their estoppel claim. Defendants argue that Cooley was prejudiced because he was never informed by Stratford of any need to personally hire an attorney to deal with Stratford on his behalf regarding coverage questions, but they fail to explain how he has been prejudiced in this regard. They further assert he was prejudiced because Stratford allowed him to give a statement to the representative of the main accident claimant, the estate of Jay Washam, which he had no obligation to give. Not only do defendants fail to explain how this was or is or could be prejudicial to Cooley, but they have not shown that this occurred because of anything Stratford did or failed to do. For these reasons, defendants' estoppel claim is without merit. *Hartford Accident Indem. Co. v. Lockard*, 239 Miss. 644, 124 So.2d 849 (1960) (to create estoppel, insured must have been misled to his injury); Appleman, *Insurance Law and Practice* § 9081, at 492 (estoppel "necessarily implies prejudicial reliance of the insured upon some act, conduct, or nonaction of the insurer"). Their waiver claim, though, is a different matter.

Again, waiver is contrasted from "estoppel" in part by the lack of any requirement that the insured establish prejudicial reliance in order to prevail. *See Pitts*, 931 F.2d at 357. However, unlike estoppel, it is said that waiver of a policy provision must be intentional, based on knowledge of the relevant facts. *Larr v. Minnesota Mut. Life Ins. Co.*, 924 F.2d 65 (5th Cir.1991). As an initial matter, Stratford denies that the doctrine of waiver can be applied in the circumstances of the case at bar based on Mississippi's familiar principle that waiver cannot be used to extend the coverage afforded by an insurance policy. This notion was explained in *Employers Fire Insurance Co. v. Speed*, 242 Miss. 341, 346, 133 So.2d 627 (1961), as follows:

> 'This court follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel.'

*See also Morris v. American Fidelity Fire Ins. Co.*, 253 Miss. 297, 173 So.2d 618 (1965)(quoting *Speed*). While Stratford denies that the provision at issue here is a forfeiture clause, the Mississippi Supreme Court has implicitly concluded otherwise, holding in *Calvert Fire Insurance Co. v. Swain*, 224 Miss. 85, 79 So.2d 537 (1955), that the insurer, through its agent, waived a similar provision which purported to provide coverage only for losses occurring within fifty miles of the place where the insured vehicle was principally garaged. *See also Dallas Glass of Hendersonville, Inc. v. Bituminous Fire & Marine Ins. Co.*, 544 S.W.2d 351 (Tenn.1976) (policy's 500–mile limitation upon coverage was merely limitation or condition pertaining to a risk already covered by policy so that doctrine of waiver could be applied where agent knew that vast majority of insured's shipments were to points beyond 500 miles, and insurer knew of shipments beyond covered radius).

Stratford further insists that defendants may not properly resort to the doctrine of waiver since it obviously did not "knowingly" or "intentionally" relinquish any of its rights under the policy. It is undisputed that within two weeks of the accident, Stratford, through its agents, knew where the accident occurred. *See Larr*, 924 F.2d at 66 (insurer's constructive knowledge based on knowledge of agent supported waiver). It further knew that its policy provided cover-

age only within fifty miles of Lucedale. Yet Stratford made no effort to ascertain whether the accident site was within the fifty-mile radius of Lucedale. While Stratford contends that under these circumstances, it cannot be held to have made a "knowing and voluntary" waiver of its contractual rights, Mississippi law holds otherwise.

The liability policy at issue in *United States Fidelity and Guaranty Co. v. Yost,* 183 Miss. 65, 183 So. 260 (1938), provided, as "Condition 'A,'" that the policy did not cover loss from liability for death caused by any elevator "while in charge of any person under [the age of eighteen]." *Id.* 183 So. at 261. Following a death caused by the insured hotel's elevator, USF & G's adjuster provided to USF & G a written statement taken from the elevator operator in which he represented that he was eighteen years old when the accident occurred. USF & G made no further investigation of the issue. However, when both the elevator operator and his mother testified at trial that he had been seventeen years old at the time of the accident, USF & G secured records from the Vital Statistics Bureau which confirmed his testimony. USF & G immediately disclaimed liability under its policy and notified its insured that it was withdrawing from defense of the lawsuit. Under those circumstances, the Mississippi Supreme Court determined that USF & G had waived Condition "A" of the contract, stating:

> If the insurer desired to avail itself of Condition "A" the facts were easily obtainable by the exercise of due investigation.
>
> .  .  .  .  .
>
> Slight circumstances of intention to waive a forfeiture will be sufficient; the law will seize upon them as evidence of intention.
>
> But the insurer says we did not know of the operator's nonage until we were in the midst of the trial, therefore, we had a right to change our position. We think this has been generally and correctly determined to mean that *even if an insurer ought to have*

*known the facts, or with proper attention to its own business, it would have been apprised of them, and cannot set up ignorance as an excuse.*

*Id.* at 263 (emphasis added). The court stressed that the insured had done nothing to induce the insurer to take the position that its policy covered the death. Instead,

> [the insurer] took its position from its own investigation, from which it learned that Ensley's statements could not be relied on, and the evidence of his true age was easily accessible, and, really, the insurer made no investigation on that point until Ensley testified on the trial. With a little diligence, and within an hour's time, the insurer could have obtained the facts from a public record.

*Id.* at 264.[6] In the case at bar, Stratford need have looked no further than its own claims file to ascertain the true location of the accident and the fact that the accident site was beyond the geographic area covered by the policy. It failed to do so, and under *Yost,* cannot "set up ignorance as an excuse" to avoid waiver. *Cf. Larr,* 924 F.2d at 66–67 (insurer's continued acceptance of premium payments after insured turned seventy years old held to constitute intentional and knowing waiver of policy provision requiring policy termination at age 70 where insurer had constructive knowledge of insured's age and "displayed no interest in maintaining an automated system to reject payments or notify parties of cancellation when they reached the age of policy termination"); *Pitts,* 931 F.2d at 357 (insurer automatically waives terms of policy if it defends insured without reservation of its rights).

In their motion for summary judgment, Stone Timber and Bituminous appear to seek a summary adjudication that Stratford's policy provides the primary coverage for the accident and that Bituminous's coverage is excess. Since their motion was filed, Stratford has stipulated that in the event it is unsuccessful in the prosecution of this declar-

---

6. While the *Yost* court discussed the prejudice to the insured by virtue of its insurer's belated denial of coverage and withdrawal of defense, the court made it clear that it was not speaking of estoppel but rather of waiver, stating, "Our court holds that it is not necessary for an insured to have been misled for a waiver of forfeiture to be applied, and that the facts need not constitute an estoppel." *Yost,* 183 So. at 263.

atory judgment action, it will assume responsibility for the defense of Stone Timber in the lawsuit filed by the Washam estate against Cooley and Stone Timber in Covington County Circuit Court, and will reimburse Bituminous for the reasonable fees and expenses incurred from the filing of that litigation against Stone Timber. Stone Timber and Bituminous interpret this language as a stipulation by Stratford that its coverage is primary. Stratford vigorously denies any such interpretation and asserts that it has stipulated only that Stone Timber will be recognized as an insured under Stratford's policy if it is determined that the policy provides coverage for Cooley. The court finds that the specific issue of whether Stratford's coverage is primary is not before the court for decision. In their amended counterclaim, Stone Timber and Bituminous allege only that "Stone Timber is an insured under the Stratford policy issued to Defendant Cooley. Therefore, Stratford is indebted to Stone Timber and/or Bituminous for any liability incurred by Defendant Cooley as a result of the accident at issue in this case up to the policy limits." Stratford's stipulation resolves that claim without the necessity of a ruling by the court on any issue.

■ Stone Timber and Bituminous also assert in their motion for summary judgment entitlement to attorney's fees and expenses incurred in this litigation, citing *Universal Life Insurance Co. v. Veasley,* 610 So.2d 290, 295 (Miss.1992). In *Veasley,* the Mississippi Supreme Court held that attorney's fees might be available as reasonably foreseeable damages where an insurer had no legitimate or arguable reason for denying benefits but did not act willfully, intentionally or maliciously. *Id.* at 295; *Willard v. Paracelsus Health Care Corp.,* 681 So.2d 539, (Miss. 1996) (*Veasley* "address[ed] ... the lack of proper damages when there is failure to pay on an insurance contract without an arguable reason, and the circumstances do not warrant punitive damages"). In the case *sub judice,* while the court has concluded that in accordance with Mississippi law, Stratford is properly held to have waived by its conduct its claim of no coverage under the policy, it had an arguable basis for denying payment. Accordingly, the court concludes that the claim for attorney's fees by these defendants fails.

■ For his part, Murray Cooley contends in this case not only that Stratford wrongly denied that its policy provided coverage for his accident, but that Stratford acted in bad faith by refusing to engage in good faith settlement negotiations on behalf of Cooley, and specifically by declining to settle the case within policy limits, choosing, rather, to file a declaratory judgment action based on an assertion of non-coverage. He points out that in settlement negotiations with Stratford and others, including Bituminous, in or around September 1995, the attorney for the Washam estate suggested that Stratford might tender its policy limits of $500,000 on Cooley's behalf as a contribution towards a total settlement of $9.5 million. Cooley cannot prevail on this claim. Under no circumstances could it reasonably be concluded that Stratford acted in bad faith by instituting this declaratory judgment action to determine a legitimate coverage dispute rather than contributing its policy limits to a pre-litigation settlement which may or may not have resulted in a complete release of Cooley. Accordingly, Stratford is entitled to summary judgment on this claim by Cooley.

In addition to his counterclaim against Stratford, Cooley contends that third-party defendants Transport Systems and its employee, Robert Lee, failed to fully explain the radius exclusion to Cooley. In response to Transport Systems and Lee's summary judgment motion, Cooley admits that the policy procured by them included a requested fifty-mile radius exclusion and that he was aware of the exclusion. Further, as the court has concluded, the language of the policy is clear and should not have required explanation. Moreover, it is notable that though prior to the accident, Cooley for one reason or another may not have fully comprehended the exclusion, he never asked for an explanation and has in any event conceded, upon a more recent reading of the policy, that it appears to exclude accidents beyond a fifty-mile radi-

us of Lucedale. The third-party complaint will be dismissed.[7]

Based on the foregoing, it is ordered that Stratford's motion for summary judgment is denied on the issue of policy coverage, but is granted as to all other claims by defendants. It follows that the motions by defendants for summary judgment are granted on the coverage issue, but denied in all other respects. Further, it is ordered that the third-party defendants' motion for summary judgment is granted.

---

7. The court does not address Bituminous and Stone Timber's argument that the third-party defendants negligently failed to disclose to Cooley his coverage options since this claim has not been advanced by Cooley.