**MUTUAL ASSURANCE, INC., Plaintiff,**

v.

**Joe F. BANKS, II, Tammy K. Banks, Donald E. Doyle, M.D., and Joseph Banks, Defendants.**

**No. CIV. A. 1:98CV485GR.**

United States District Court, S.D. Mississippi, Southern Division.

Jan. 3, 2000.

Lanny R. Pace, Steen, Reynolds & Dalehite, Jackson, MS, for Mutual Assurance, Inc., plaintiffs.

Jack C. Pickett, Kitchens & Ellis, Pascagoula, MS, Mark D. Lumpkin, Minor and Associates, Biloxi, MS, Rodney A. Ray, Ray & Purnell, PLLC, West Point, MS, John L. Hunter, Cumbest, Cumbest, Hunter & McCormick, Pascagoula, MS, for Joe F. Banks, II, Tammy K. Banks, Donald E. Doyle, M.D., Joseph Banks, defendants.

## MEMORANDUM OPINION

GEX, District Judge.

This cause is before the Court on the motion for partial summary judgment [17-1] filed by the plaintiff, Mutual Assurance, Inc. [Mutual], pursuant to Rule 56 of the Federal Rules of Civil Procedure. After due consideration of the evidence of record, the briefs of counsel, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows.

### Statement of Facts

On January 21, 1997, Dr. Donald Doyle performed certain medical procedures on Joe Banks, II. (Ct. R., Doc. 29, ¶ 12.) Shortly thereafter, Dr. Doyle's services were terminated by Joe's mother, Tammy Banks. (Ct. R., Doc. 17, Exh. A–1.) In response, Dr. Doyle sent a letter to Tammy apologizing for any perceived rudeness to her and stating that, "[t]he surgery I performed upon Joe Francis Banks did not give him pneumonia." (*Id.* at Exh. A–2.) Tammy's counsel, however, requested Joe's medical records from Dr. Doyle on February 24, 1997. (*Id.* at Exh. A–3.)

Dr. Doyle subsequently applied for medical professional liability insurance with Mutual on January 16, 1998. (Ct. R., Doc. 1, Exh. 2.) On the application, Dr. Doyle was asked whether he was "aware of any incidents or circumstances which could, or are likely to, result in a malpractice claim or suit being made or brought against [him]." (*Id.*) Dr. Doyle responded by marking No?7D on the form. (*Id.*) The application also contained the following statement which Dr. Doyle signed:

> It is understood that no insurance of any type will be provided for:
>
> . . .
>
> 2. Any medical incident which occurred prior to the initial effective date of the policy, on such effective date, the applicant knew or believed, or had reason to know or believe, that such medical incident resulted, would result, or was likely to result, in a claim or suit against the applicant.

(*Id.*) In reliance on the application, Mutual issued a policy to Dr. Doyle effective January 1, 1998, which excluded coverage for that identical reason. (Ct. R., Doc. 1, Exh. 1, p. 11 ¶ K.)

On May 29, 1998, Tammy, through her counsel, informed Dr. Doyle that she intended to pursue a claim against him for his alleged negligent medical treatment of her son during January of 1997. (Ct. R., Doc. 1, Exh. 4.) After Dr. Doyle notified Mutual of the potential claim, Mutual informed him on August 4, 1998, that it was reserving its right to deny him coverage.[1] Mutual then filed the instant complaint on October 22, 1998, seeking a declaratory judgment that no coverage existed under

---

1. Although neither party submitted evidence in support of such notification, both parties agree that Mutual reserved its right to deny Dr. Doyle coverage on August 4, 1998. In the memorandum in support of its motion for partial summary judgment, Mutual asserts that Dr. Doyle was informed that Mutual "was reserving its rights to deny coverage for part or all of the Banks['] claim, but that if a complaint was filed on behalf of Banks, [Mutual] would defend Dr. Doyle under the reservation of rights against any such claims." (Pl.'s Mem. in Sup. of Mot. for Partial Summ. J., p. 3.) Likewise, Dr. Doyle maintains in his memorandum in response that Mutual notified him that, "it was going to reserve its rights to deny coverage" to him. (Def.'s Mem. in Resp., p. 3.) Dr. Doyle does not elaborate on whether he was told that Mutual would provide a defense if he was later sued by the Banks. (*Id.*)

the policy for the acts and/or omissions complained of by the Banks, and therefore, that Mutual had no obligation or duty to defend Dr. Doyle under the policy. (Ct. R., Doc. 1, p. 5.) Thereafter, a complaint was filed on behalf of Joe Banks against Dr. Doyle on January 20, 1999, in the Circuit Court of Jackson County, Mississippi, alleging negligent treatment.

In response to the complaint for a declaratory judgment, Dr. Doyle filed an answer and a counterclaim against Mutual. (Ct. R., Doc. 6, p. 6.) Dr. Doyle alleged in the counterclaim that Mutual had a duty to do the following: (1) investigate the facts surrounding Joe Banks' treatment; and (2) provide him with a defense against any claims made by the Banks. (*Id.* at pp. 7–8.) Thus, Dr. Doyle asserted that by failing to perform those duties and by filing the declaratory action, Mutual breached its covenant of good faith and fair dealing with its insured. (*Id.* at p. 8.)

Consequently, Mutual filed the instant motion for partial summary judgment regarding the counterclaim issues. (Ct. R., Doc. 17.) Mutual attached the affidavit of Tara Bostick, a Coverage Manager at Mutual, who maintains that, "[a]t no time has [Mutual] denied coverage for the [Banks'] claim nor denied a defense to Dr. Doyle in connection with the same." (*Id.* at Exh. A, ¶ 5.)

### Standard of Review

Summary judgment, where appropriate, is designed "to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1, 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted). A grant of summary judgment is appropriate only when, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Stated differently, once a properly supported motion for summary judgment is presented, summary judgment must be entered against a nonmoving party if that party fails to make a showing sufficient to establish the existence of a genuine issue of fact essential to that party's case. *Catrett,* 477 U.S. at 322, 106 S.Ct. 2548.

### Legal Analysis

■ At this time, the issue before the Court is not whether coverage exists under the policy, *i.e.* whether Dr. Doyle knew or should have known of Banks' potential claim. Rather, the issue is whether a genuine issue of material fact exists regarding Dr. Doyle's counterclaim for bad faith resulting from Mutual's decision to file a declaratory action prior to interviewing Dr. Doyle. In order to pursue a claim for bad faith denial of coverage in Mississippi, the insured bears a heavy burden to prove that its insurer lacked any arguable or legitimate basis to deny such coverage and that the "insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *State Farm Mutual Auto. Inc. Co. v. Grimes,* 722 So.2d 637, 641 (Miss. 1998) (citations omitted); *Murphree v. Federal Ins. Co.,* 707 So.2d 523, 529–30 (Miss.1997).

■ In his response to Mutual's motion for partial summary judgment, Dr. Doyle asserts that additional discovery is needed pursuant to Rule 56(f) of the Federal Rules of Civil Procedure regarding the issue of whether Mutual had denied him coverage. (Ct. R., Doc. 21, p. 2.) The Fifth Circuit has stated that prior to obtaining a continuance under Rule 56(f),[2] the party seeking discovery must comply with three

2. The rule is as follows:

> Should it appear from the affidavits of a party opposing the motion that the party

general requirements as follows: (1) make a request to extend discovery prior to a summary judgment ruling; (2) send notice to the court that further discovery is being sought; and (3) provide the court with an explanation addressing how the requested specific discovery relates to the pending motion for summary judgment, *i.e.* "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *7547 Corp. v. Parker & Parsley Dev. Partners,* 38 F.3d 211, 220 (5th Cir.1994); *Securities & Exch. Comm'n v. Spence & Green Chem. Co.,* 612 F.2d 896, 901 (5th Cir.1980) (citations and internal quotation omitted).

The Court finds that Dr. Doyle has failed to identify any specific discovery that is needed in order to properly respond to Mutual's motion for partial summary judgment. The Court further finds that Dr. Doyle does not offer any explanation regarding how such specific discovery, if allowed, would create a genuine issue of material fact regarding the bad faith counterclaim. In his affidavit, Dr. Doyle neither denies that coverage was provided by Mutual nor offers any reason to conduct additional discovery. For those reasons, the Court finds that Dr. Doyle has not met the prerequisites of Rule 56(f), and that further discovery is not needed under the circumstances of this case.

■ The only evidence before the Court indicates that Mutual has not denied coverage to Dr. Doyle. The Court finds that Mutual simply filed the instant declaratory action to determine coverage and simultaneously reserved its right to deny such coverage while providing Dr. Doyle with a defense against the Banks' allegations. Contrary to Dr. Doyle's assertion, filing a declaratory action to determine whether coverage exists is not indicative of bad faith, especially where the declaratory action was filed prior to the underlying state court action.[3] Although an insurance company has a duty to investigate as discussed *infra,* there is simply no evidence indicating that Mutual has denied coverage. The Court therefore finds that a material issue of fact does not exist and Mutual's motion for partial summary judgment regarding Dr. Doyle's counterclaim for bad faith should be granted.

■ Alternatively, assuming *arguendo* that Mutual had denied coverage, the evidence demonstrates that Mutual had an arguable or legitimate basis to deny such coverage, thereby negating a bad faith claim. The termination of Dr. Doyle's services immediately following the surgery, Dr. Doyle's letter to Tammy denying liability for any wrongdoing, the subsequent request for the patient's medical records by the Banks' attorney, and Dr. Doyle's denial of any knowledge of the potential claim present a material issue of fact regarding whether Dr. Doyle knew or should have known that Banks would file a claim. Thus, the Court finds that Mutual had at

cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

3. *See Employers Mut. Cas.Co. v. Tompkins,* 490 So.2d 897, 905 (Miss.1986) (the filing of a declaratory action to determine coverage did not constitute bad faith even though it was filed in an attempt to delay the previously filed state court claim); *Allstate Ins. Co. v. Ashley,* 998 F.2d 300, 305 (5th Cir.1993) (the district court correctly found that the insurer had not acted in bad faith as a matter of law

when it tendered certain undisputed benefits to the court and simultaneously filed for declaratory relief): *Stratford Ins. Co. v. Cooley,* 985 F.Supp. 665, 673 (S.D.Miss.1996) ("[u]nder no circumstances could it reasonably be concluded that [the insurer] acted in bad faith by instituting this declaratory judgment action to determine a legitimate coverage dispute rather than contributing its policy limits to a pre-litigation settlement ..."); *see also Cay Divers, Inc. v. Raven,* 812 F.2d 866, 871 (3rd Cir.1987) ("providing a defense under reservation of a right to deny coverage as a defense to liability for indemnification does not breach a duty to the insured") (citations omitted).

least an arguable reason to deny coverage even if the jury subsequently determines the coverage issue in Dr. Doyle's favor. *See Tompkins, supra,* 490 So.2d at 905 (the filing of a declaratory action to determine coverage did not constitute bad faith even though the federal court rejected the insurer's coverage theory). The Court therefore alternatively finds that Mutual is entitled to partial summary judgment regarding Dr. Doyle's bad faith claim.

Out of an abundance of caution, the Court will discuss Dr. Doyle's allegations that Mutual's failure to interview him prior to filing the declaratory action, by itself, constitutes bad faith. The undisputed evidence indicates that Mutual did not interview Dr. Doyle, but did investigate the claim for coverage by obtaining the hospital's records which revealed the events previously described, *i.e.* the dates the services were rendered, the termination of Dr. Doyle's services, his letter of denial, and the attorney's request for the patient's medical records.

 Although an insurance company has a duty to adequately investigate an insured's claim, the insured must prove more than mere negligence in conducting the investigation. Rather, the insured must prove that a proper investigation "would easily adduce evidence showing its defenses to be without merit." *Murphree, supra,* 707 So.2d at 531 (citations and internal quotation omitted). It must be noted that an interview of Dr. Doyle would be a material issue only if Mutual Assurance had delayed or denied coverage, neither of which has occurred in the instant action. Even if Mutual interviewed Dr. Doyle, it would have discovered that he denied knowing the potential for a negligence claim by the Banks. (Dr. Doyle's Aff. ¶ 6.)

Such denial would only continue to create a material issue of fact on the knowledge issue, thereby possibly excluding coverage under the policy.[4] As a result, the Court finds that Mutual reasonably investigated the facts surrounding the Banks' potential claim and that any failure to interview Dr. Doyle prior to filing the declaratory action does not independently support a bad faith claim.

*Conclusion*

For the reasons above, the Court finds that Dr. Doyle has not met the prerequisites of Rule 56(f) of the Federal Rules of Civil Procedure, and that further discovery is not needed under the circumstances of this case. The Court further finds that there is no evidence indicating that Mutual has denied coverage and that Mutual had at least an arguable reason to deny coverage even if the jury subsequently determines the coverage issue in Dr. Doyle's favor. As a result, the Court finds that Mutual's motion for partial summary judgment regarding Dr. Doyle's bad faith claim should be granted. Moreover, the Court finds that Mutual reasonably investigated the facts surrounding the Banks' potential claim and that any failure to interview Dr. Doyle prior to filing the declaratory action does not independently support a bad faith claim. Each party shall bear their respective costs.

A separate Judgment in accordance with this Memorandum Opinion shall issue this date.

FED.R.CIV.P. 56(f).

---

4. In his affidavit, Dr. Doyle alludes to a scenario whereby he was informed by Mutual's agent, Mike Windham, that a request for medical records did not require him to notify Mutual of a potential claim. (Dr. Doyle's Aff. ¶ 7.) Dr. Doyle maintains that had an interview taken place, it would have revealed Windham's misrepresentation, and therefore proven Mutual's defenses to be without merit. To the contrary, the Court finds that Dr. Doyle's argument is irrelevant to whether he should have known that a potential claim existed. Regardless of whether Dr. Doyle was interviewed or any misrepresentation was discovered, it would not have been "easily adduced" that Mutual's policy exclusion was without merit given the fact that the request for medical records was made by the Banks' attorney in conjunction with the other evidence previously described.